UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAMION REID,                          )
    Petitioner/Defendant,             )
                                      )
            v.                        ) NO. 03-CR-30031-MAP
                                      ) NO. 16-CV-30111-MAP
UNITED STATES OF AMERICA              )
    Respondent.                       )

MEMORANDUM & ORDER REGARDING
DEFENDANT'S MOTION TO CORRECT SENTENCE
AND ORDER IMMEDIATE RELEASE
(Dkt. No. 57)

May 18, 2017

PONSOR, U.S.D.J.

I.   INTRODUCTION

Following Petitioner's plea of guilty to possession with intent to distribute cocaine base, this court found, based on his prior convictions, that Petitioner was a Career Offender under § 4B1.1 of the United States Sentencing Guidelines (U.S.S.G.). In light of this finding, on June 1, 2004, the court sentenced Petitioner to an enhanced prison term of 188 months. Petitioner now seeks relief under 28 U.S.C. § 2255, arguing that two subsequent Supreme Court cases -- Johnson v. United States, 559 U.S. 133 (2010)

(Johnson I) and Johnson v. United States, 135 S. Ct. 2551 (2015) (Johnson II) -- compel a finding that his Career Offender sentence violated due process.

The hitch is that the two Johnson decisions titularly addressed only sentences carried out under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA), and not sentences like Petitioner's, imposed under the Career Offender provisions of the Sentencing Guidelines. Initially, the overwhelming majority of district courts and courts of appeals applied the Johnson holdings in Guidelines as well as ACCA contexts, because their definitions of a "crime of violence" employed virtually identical language. See Beckles v. United States, -- U.S. - , 137 S. Ct. 886, 902 n.3 (2017) (Sotomayor, J., concurring).

Beckles reversed this flow of authority, at least to some extent. The Supreme Court held that "the advisory [Sentencing] Guidelines are not subject to vagueness challenges under the Due Process Clause." Beckles, 137 S. Ct. at 890 (emphasis added). The use of the term "advisory" is critical. Until the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Sentencing

2

Guidelines had been mandatory. Beckles makes clear that if Petitioner had been sentenced as a Career Offender <u>after</u> the 2005 Booker decision, the Johnson authorities would not assist him in obtaining relief now.

As noted above, however, Petitioner was sentenced in June 2004, before Booker. This case therefore raises the question whether Beckles bars a due process challenge to a prison sentence imposed under the Career Offender provisions of the Sentencing Guidelines at a time when the Guidelines were not advisory, but mandatory.

Because Beckles itself makes clear that its holding does not govern sentences imposed under the non-advisory, pre-Booker sentencing regime, and because the logic of the Johnson decisions makes them fully applicable in a pre-Booker, mandatory Guidelines context, the court will allow Defendant's motion to correct his sentence and set the case for re-sentencing.

## II. FACTUAL AND LEGAL BACKGROUND

The underlying facts are as follows. On June 19, 2003, Petitioner was charged in a one-count indictment with distributing and possessing with intent to distribute

cocaine base (Dkt. No. 1).  Petitioner subsequently pled guilty, and on June 1, 2004, he appeared for sentencing.  In weighing Petitioner's potential prison term, the court applied the Career Offender provisions of the Sentencing Guidelines.  U.S.S.G. § 4B1.1.  These provisions substantially elevate a defendant's sentence where he is at least eighteen years old at the time of his offense; the offense of conviction is either a crime of violence or a drug offense; and the defendant has at least two previous convictions for either a crime of violence or a drug offense.  Id.

At the June 1, 2004, sentencing the court found, without substantial dispute, that Petitioner qualified for the Career Offender enhancement.  He was over eighteen at the time of his serious drug offense.  Moreover, as of 2004, he appeared to have four qualifying prior convictions: three for violent offenses and one for an earlier serious drug offense.  The appropriateness of the drug offense, a 1997 conviction for distribution of a Class B substance, as a predicate for an enhanced Career Offender sentence is not a matter of debate.  The impact of the three "violent offense"

convictions under current law, however, is now highly doubtful.

The violent offense convictions comprised an October 1996 conviction for assault and battery on a police officer and resisting arrest; a November 1996 conviction for assault and battery and intimidation of a witness; and a February 1997 conviction for breaking and entering in the daytime.

Prior to the Johnson decisions, a sentencing court would assess whether a particular prior conviction was a violent offense by following one of two analytical avenues set forth in U.S.S.G. § 4B1.2 -- applying either the "force" clause or the "residual" clause. To constitute a crime of violence under the force clause, the offense had to have "as an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 4B1.2(a)(1). For the residual clause to apply, the offense had to be one of four specific categories of crime (burglary of a dwelling, arson, extortion, or a crime involving the use of explosives) or a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.1(a)(2) (Nov. 1, 2003).

The definitions set forth in the residual and force clauses contained in the Career Offender provisions of the Sentencing Guidelines tracked virtually identical language contained in the ACCA.[1]  See 18 U.S.C. § 924(e)(2)(B)(i) & (ii).

At the 2004 sentencing hearing, no significant argument was offered as to whether the three identified convictions qualified as violent offenses under, at least, the residual clause of U.S.S.G. 4B1.2.  Since, with these prior convictions plus the drug conviction, Petitioner had four predicates -- two would have been sufficient -- he fell into the Career Offender category.

The effect of this designation was to nearly triple Petitioner's potential sentence, increasing his Offense Level from 23 to 34.  With a Criminal History Category VI, Petitioner's resulting Sentencing Guidelines range rose from 92-115 months to 262-327 months.

After hearing argument at sentencing, and reviewing the report of a forensic psychologist, the court determined that

---

[1] Since Petitioner's sentencing, § 4B1.1(a)(2) has been substantially amended, among other things to eliminate the quoted language.

Petitioner suffered from significantly reduced mental capacity that contributed substantially to the commission of the underlying offense. As of 2004, this qualified Petitioner for a rare "departure" under the Sentencing Guidelines. See U.S.S.G. § 5K2.13. Based on this "diminished capacity" basis for departure, the court lowered Petitioner's Offense Level by three notches to a level 31 and imposed a sentence at the bottom of the resulting range, 188 months. While Petitioner obviously benefitted from this departure, his sentence was still more than six years above the top of what would have been the Sentencing Guidelines range had he not qualified as a Career Offender.

Petitioner now argues that, in light of the Johnson holdings, he should never have been deemed a Career Offender, and he seeks re-sentencing. It is beyond dispute that if the Johnson holdings applied to sentences based upon the Career Offender provisions of the Sentencing Guidelines, as they explicitly apply to sentences imposed under the identical language in the ACCA, then Petitioner would be entitled to re-sentencing.

Johnson I held, in 2010, that for a prior conviction to

qualify as a predicate crime under the force clause of the ACCA, the offense must have required "<u>violent</u> force -- that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140 (emphasis in original). The government concedes that under current First Circuit law, none of the three violent offense convictions cited in 2004 to support Petitioner's Career Offender status would satisfy <u>Johnson</u> I's "<u>violent</u> force" definition if Petitioner's sentence had been imposed under the ACCA.

In 2015, <u>Johnson</u> II held that imposition of an enhanced sentence through invocation of the catch-all language in the residual clause of the ACCA (referring to any felony that "involves conduct that presents a serious potential risk of physical injury to another" as set forth in 18 U.S.C. § 924(e)(2)(B)(ii)) violated due process. Justice Scalia, writing for the majority in <u>Johnson</u> II, stated that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." 135 S. Ct. at 2557.

The combined effect of <u>Johnson</u> I and <u>Johnson</u> II, had

Petitioner been sentenced under the ACCA, would require re-sentencing in the currently prevailing, and substantially altered, legal landscape. Until very recently, as noted above, the overwhelming majority of Circuit Courts of Appeal and District Courts assumed that the Johnson holdings -- explicitly applicable to the ACCA -- applied implicitly to sentences imposed under the identical language contained in the Career Offender provisions of the Sentencing Guidelines. Indeed, for many years the government itself, making the same assumption, conceded this overlap.

Beckles has capsized these assumptions, with regard to sentences imposed under the advisory Sentencing Guidelines as they emerged following the Court's 2005 Booker decision. As noted above, this case requires the court to weigh the impact of the Johnson decisions and Beckles on sentences imposed prior to 2005, when the Guidelines were mandatory.

### III. DISCUSSION

Justice Thomas's majority opinion in Beckles could easily have made clear that the Court's decision embraced both sentences before and sentences after Booker, if that was its intent. Instead, his argument is emphatically the

opposite. Beckles repeatedly and explicitly notes that it applies only to the advisory sentencing regime commencing after the Booker decision in 2005. The sea change in the federal law of sentencing precipitated by Booker is the heart of Justice Thomas's analysis. He takes pains to describe how monumental Booker's impact was on sentencing practice in the district courts.

> The Guidelines were initially binding on district courts, Booker, 543 U.S. at 233, but this Court in Booker rendered them "effectively advisory," id., at 245. Although the Guidelines remain "the starting point and the initial benchmark" for sentencing, a sentencing court may no longer rely exclusively on the Guidelines range; rather, the court "must make an individualized assessment based on the facts presented" and the other statutory factors.

Beckles v. United States, 137 S. Ct. at 894 (citing Gall v. United States, 552 U.S. 38, 49 & 50 (2007)). Since the Sentencing Guidelines now "merely guide the district court's discretion" -- the decision goes on to say -- they "are not amenable to a vagueness challenge" under the Due Process Clause. Id.

Significantly, Justice Thomas quotes Pepper v. United States, 562 U.S. 476, 501 (2011), to emphasize that "our post-Booker decisions make clear that a district court may

in appropriate cases impose a non-Guidelines sentence based on a disagreement with the [Sentencing] Commission's views." Beckles, 137 S. Ct. at 894. Quoting Irizarry v. United States, 553 U.S. 708, 714 (2008), he also observes that, after Booker, "'[t]he due process concerns that . . . require notice in a world of mandatory Guidelines no longer' apply." Beckles, 137 S. Ct. at 894 (alterations in original).

Justice Sotomayor's separate concurrence confirms the limited scope of Beckles. She notes (with no quibble from Justice Thomas) that the majority opinion "at least leaves open" the question of vagueness challenges to sentences imposed pre-Booker. Id. at 903 n.4 (Sotomayor, J., concurring).

In sum, it could hardly be clearer that Beckles does not bar Petitioner's claim for relief under 28 U.S.C. § 2255 regarding a sentence imposed prior to Booker under the then-mandatory Career Offender provisions of the Sentencing Guidelines.

The fact that in 2004 this court had the very limited power to "depart" from the mandatory Sentencing Guidelines

11

range in rare instances -- and exercised that power in this case -- does not alter the analysis. Beckles itself no where suggests that the narrow power to depart prior to Booker rendered the Guidelines something other than mandatory for purposes of constitutional analysis. Indeed, the clear import of Beckles is precisely to the contrary. Throughout the decision Justice Thomas consistently maintains the distinction between "mandatory" Sentencing Guidelines prior to Booker and "advisory" Guidelines afterwards. The power to depart, pre-Booker, does not in any way cloud or qualify this central theme.

This analytical tack is not surprising, given the way the Court of Appeals treated the Guidelines, and departures from them, before 2005. Prior to Booker, the First Circuit stringently policed any sentences below the applicable Guideline range. In United States v. Pereira, 272 F.3d 76 (1st Cir. 2001), for example, the Court of Appeals reversed what it considered the over-expansive use of the "family ties and responsibilities" departure, chastising the lower court and reminding the judge that "[d]istrict courts must impose sentences within the applicable ranges set forth

within the Guidelines." Id. at 80.  While the court recognized that departures could be proper in appropriate circumstances, it emphasized that "existing case law defines the parameters for departure, outside of which a court cannot go without assuming the risk of acting beyond permissible limits."[2]  Id.

If any further clarification were needed, Booker itself explicitly emphasizes this point, stating that "[b]ecause they are binding on judges, we have consistently held that the Guidelines have the force and effect of laws."  543 U.S. at 233.  Justice Stevens's majority opinion in Booker goes on to state: "The availability of a departure in specified circumstances does not avoid the constitutional issue . . . ."  Id. at 234.  Again, Booker's core holding was that the

---

[2] It is probably impossible, as this dark era fades into the past, to express how grievous the distortion of the federal sentencing regime prior to Booker was.  Under the basilisk eye of the Court of Appeals for more than a decade, district judges were compelled to impose harshly inflated prison terms on thousands of defendants.  After Booker, it emerged that this adamantly enforced sentencing regime was, and always had been, flatly unconstitutional.  Since the imposition of a fair and reasonable sentence in a criminal case is arguably the most important, and most arduous, responsibility of a trial judge, the rigidly imposed pre-Booker straitjacket is painful to recall.

Sentencing Guidelines up to that time were equivalent in "force and effect" to a sentencing statute such as the ACCA.

The bulk of district court decisions handed down in the short time since Beckles have recognized the distinction between pre- and post-Booker sentences, at least theoretically and mainly in dicta. See United States v. Russo, No. 8:03CR413, 2017 WL 1533380 (D. Neb. Apr. 27, 2017); Chubb v. United States, No. 2:15-CV-3095, 2017 WL 1397526 (S.D. Ohio Apr. 19, 2017); United States v. Rhodes, No. CR-01-202-R, 2017 WL 1393743 (W.D. Okla. Apr. 18, 2017); United States v. Savage, No. CR 04-128-BLG-SPW, 2017 WL 1383660 (D. Mont. Apr. 13, 2017); United States v. Bowen, No. CR-99-8-C, 2017 WL 1333591 (W.D. Okla. Apr. 11, 2017); Pace v. United States, No. 3:02-CR-33-1, 2017 WL 1364216 (N.D. W. Va. Apr. 11, 2017). But see Wooden v. United States, Nos. 1:03-CR-66-HSM-CHS-1, 1:15-CV-304-HSM, 2017 WL 1403222 (E.D. Tenn. Apr. 19, 2017); Sinclair v. Willis, No. EP-17-CV-58-DB, 2017 WL 1383938 (W.D. Tex. Apr. 13, 2017).

As a fallback argument to Beckles, the government attempts to contend that Petitioner has forfeited any claim for a due process violation by failing to assert it at the

time of his sentencing. This lapse, the argument runs, cannot now be cured by any showing of so-called "cause and prejudice." See Reed v. Ross, 468 U.S. 1, 15 (1984). This argument has been rejected by every court in this district that has considered it. See United States v. Lattanzio, -- F. Supp. 3d --, 2017 WL 519241, at *2 (D. Mass. Feb. 8, 2017) (collecting cases that reject the government's cause and prejudice argument).

In sum, Beckles does not apply to pre-Booker sentences imposed under the mandatory Sentencing Guidelines. The Supreme Court's Johnson precedents make clear now that the court's employment of the Career Offender provisions of the Guidelines at the 2004 sentencing violated the Due Process Clause of the Fifth Amendment. No other argument offered by the government in opposition to Petitioner's claim for relief has merit. Petitioner is therefore entitled to re-sentencing.

### III. CONCLUSION

For the foregoing reasons, Petitioner's motion to correct sentence is hereby allowed. The clerk will set the case for a re-sentencing at the earliest possible date.

It is So Ordered.

    /s/ Michael A. Ponsor
MICHAEL A. PONSOR
United States District Judge